# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 94 C 2579 | **DATE** | 9/15/2000 |
| **CASE TITLE** | Great Lakes Dredge & Dock Co. vs. Commercial Union Assurance Co. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The parties' bills of costs and corresponding objections are resolved as follows. Great Lakes is awarded $80,805.83 in costs against London Insurers and Continental. The City is awarded $6,743.08 in costs against London Insurers. Continental is awarded $9,061.99 in costs against the City. The Intervenor Class Plaintiffs are awarded $5,077.87 against London Insurers and Continental. The City's Motion to Allow as Part of the Taxable Costs Against London Insurers Certain Attorneys' Fees, Other Costs, and a Statutory Penalty [588] is granted in part, as set forth on the accompanying Memorandum Opinion and Order. The City is awarded a $25,000 penalty against London Insurers pursuant to § 155 of the Illinois Insurance Code. The City and London Insurers are to address the amount of attorneys' fees to be recovered by the City according to the briefing schedule set forth in the Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | **Document Number** |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | SEP 1 8 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

FILED FOR DOCKETING
FD-7
00 SEP 15 PM 5: 21

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION



GREAT LAKES DREDGE & DOCK )
COMPANY, )
      Plaintiff-Counterclaim Defendant. )
       )
THE CITY OF CHICAGO, et al. )
       )
      Plaintiff-Intervenors, )      Case No. 94 C 2579
       )
      v. )
       )
COMMERCIAL UNION ASSURANCE )
COMPANY, et al., )      Joan B. Gottschall
       )
      Defendants-Counterclaim Plaintiffs. )

## MEMORANDUM OPINION AND ORDER

Stemming from the judgments entered in their litigation over insurance coverage for the 1992 Chicago flood, Great Lakes Dredge & Dock Co., the City of Chicago, London Insurers, Continental Insurance Co., and the intervenor class plaintiffs now face myriad disputes regarding the prevailing parties' entitlement to taxable costs, attorneys' fees, and statutory penalties. The court will not recite the history of this litigation, which is set forth fully in *Great Lakes Dredge & Dock Co. v. Commercial Union Assurance Co.*, No. 94 C 2579, 1999 WL 966472 (N.D. Ill. Sep. 28, 1999), *Great Lakes Dredge & Dock Co. v. Commercial Union Assurance Co.*, No. 94 C 2579, 1999 WL 705599 (N.D. Ill. Aug. 27, 1999), and *Great Lakes Dredge & Dock Co. v. Commercial Union Assurance Co.*, 57 F. Supp.2d 525 (N.D. Ill. 1999).

"[C]osts other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs. . . ." FED. R. CIV. P. 54(d)(1). Under 28 U.S.C. § 1920, the

following costs are properly taxable:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

## *Great Lakes' Bill of Costs*

Great Lakes seeks $104,637.05 in costs. London Insurers (joined by Continental) object to several categories of claimed costs. First, London Insurers argue that the $23,831.22 in court reporter fees should not be taxed because "[i]t is impossible to determine, without more information, whether the number of transcripts and the rate per page that Great Lakes paid were within the permitted guidelines." (Resp. at 2) Local Rule 54.1(b) provides that the rate for reimbursement of deposition copies shall not exceed the regular rates established by the Judicial Conference of the United States, which has established maximum copy rates of $3.00 per page for the original transcript and $0.75 per page for a copy of the transcript. Great Lakes insists that it "has presented these costs in the manner in which it keeps these records," and argues that it "should not be required to undertake massive archiving of records in order to justify amounts that it necessarily paid to court reporters during discovery in this case." (Reply at 3)

While the court agrees that "massive archiving of records" should not be necessary for

2

Great Lakes to recover its court reporter fees, Great Lakes is required to submit information that would allow the court to determine whether the fees sought to be recovered comport with the Judicial Conference rates. *See Cengr v. Fusibond Piping Systems, Inc.*, 135 F.3d 445, 456 (7th Cir. 1998) (holding that "the Judicial Conference rates apply to deposition charges by private court reporters"). This is not a complicated inquiry, as Great Lakes needed only to provide records setting forth the number of transcript pages, so that the per-page cost could be compared to the Judicial Conference rates. Because Great Lakes has not done so, the court declines to tax the $23,831.22 in court reporter fees at this time. The court will revisit this issue if Great Lakes provides the required information.

London Insurers argue that the $12,448.06 in printing costs should not be taxed because the submitted records' generic descriptions of the costs – as "Miscellaneous Litigation Documents" and "Photocopy litigation documents" – are inadequate. Great Lakes argues that "London Insurers cannot seriously contest that the amount of costs incurred by Great Lakes for graphics and trial exhibits is excessive given the fact that London Insurers' counsel used many – if not most – of Great Lakes' exhibits during the course of the trial." (Reply at 2) The court notes that the bulk of printing costs – more than $11,300 worth – stem from the production of color charts and exhibits used in court. Contrary to London Insurers' characterization, these entries on Great Lakes' billing printouts do not suffer from the vague description of "miscellaneous litigation documents," but are described accurately as "[c]olor charts for case at hearing" and "[e]nlargements of prints and charts for court hearing." (Exh. 4 to Bill of Costs)

More significantly, London Insurers' suggestion that the enlargement or creation of demonstrative exhibits is not taxable runs counter to the language of *Cefalu v. Village of Elk*

3

*Grove*, 211 F.3d 416 (7th Cir. 2000), in which the Seventh Circuit recognized that "[o]ur own cases embrace the more expansive definition of 'exemplification,'" allowing "an award of the reasonable expense of preparing maps, charts, graphs, photographs, motion pictures, photostats, and kindred materials." *Id.* at 427 (quoting *EEOC v. Kenosha Unified School Dist. No. 1*, 620 F.2d 1220, 1227 (7th Cir. 1980)). The court held that "[s]o long as the means of presentation furthers the illustrative purpose of an exhibit . . . it is potentially compensable as exemplification." *Id.* at 428. Even those cases relied on by London Insurers acknowledge that enlargement costs are taxable if the exhibits are necessary to the trier of fact's understanding of an issue. *See, e.g., Robinson v. Burlington N. R.R. Co.*, 963 F. Supp. 691, 694 (N.D. Ill. 1997). This court can say with certainty – given that the exhibits were used at a bench trial – that the charts were immensely helpful to the trier of fact. Accordingly, the printing costs are taxable.

London Insurers also contend that the $62,927.46 in exemplification and copy costs should not be taxed because the submitted records do not provide enough information to determine whether the costs are recoverable. The Seventh Circuit has observed that a prevailing party seeking to recover photocopying costs is "not required to submit a bill of costs containing a description so detailed as to make it a impossible economically to recover photocopying costs." *Northbrook Excess and Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir. 1991). Instead, Great Lakes must "provide the best breakdown obtainable from retained records." *Id.*

Great Lakes has indicated that copies for this case were given a separate billing number, and that the copying costs are calculated based on the reasonable charge of $.09 per page. Further, Great Lakes' billing printouts set forth the date on which the copies were made, along

4

with the billing attorney, the amount charged, and a general description for each set of copies made. While the descriptions – using phrases such as "miscellaneous litigation documents," "complaints," and "research material" – are admittedly vague, the court finds it impractical to suggest that, in a case this size, law firm employees must record a precise description of every document copied or a reason why the copy is necessary in order for copying costs to be taxable. There is no indication that Great Lakes' attorneys made a habit of making unnecessary sets of copies, as there was in *Kulumani v. Blue Cross Blue Shield Ass'n*, Nos. 99-3001, 99-4133, 2000 WL 1185566, at *3 (7th Cir. Aug. 22, 2000) (remanding district court's award of costs where party "billed for five sets of many papers, perhaps more sets for others"). The court does not believe that a prevailing party must prove the absence of wasteful copying in order to recover its costs. The claimed amount – $62,927.46 – is large, but the court finds it reasonable considering the six years of document-driven litigation. The Seventh Circuit has repeatedly "upheld rather large photocopying costs produced as a result of long, paper intensive litigation." *Northbrook Excess*, 924 F.2d at 643 n.13.

Finally, London Insurers challenge the amounts claimed by Great Lakes for the testimony of its expert witnesses. London Insurers argue that only the statutory fee of $40 per day may be charged for witness appearances, whether expert or otherwise, at trial or depositions. To the extent that Great Lakes seeks the recovery of expert witness fees beyond the statutory amount, London Insurers contend that such fees are not taxable because the experts were not court-appointed, and because the experts testified about the excess policies, not the CGL policy. Great Lakes argues that the fees are recoverable under Fed. R. Civ. P. 26(b)(4)(C) because they are "fees for the approximate time that its experts were being questioned by London Insurers."

(Reply at 3)

The witness fee specified in § 1920(3) is defined in 28 U.S.C. § 1821, which provides that:

> (a)(1)  Except as otherwise provided by law, a witness in attendance at any court of the United States . . . shall be paid the fees and allowances provided by this section.
>
> * * *
>
> (2)(b)  A witness shall be paid an attendance fee of $40 per day for each day's attendance.  A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

28 U.S.C. § 1821.

Great Lakes has requested only the $40 per day statutory fee for their experts' trial testimony – in addition to the subsistence allowance provided by § 1821 – and London Insurers do not contest the amount claimed.  What London Insurers do contest is Great Lakes' entitlement to fees beyond the statutory amount for the experts' deposition time.  While under Rule 54(d), "the prevailing party can recover only the statutory amounts prescribed in § 1821 and not additional expert witness fees," *State of Illinois v. Sangamo Construction Co.*, 657 F.2d 855, 865 (7th Cir. 1981), Rule 26(b)(4)(C) provides that "[u]nless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery." FED. R. CIV. P. 26(b)(4)(C); *see Barnett v. City of Chicago*, No. 92 C 1683, 1999 WL 138813, at *10 (N.D. Ill. Mar. 5, 1999) ("Although fees in excess of the $40.00 per-day limit of 28 U.S.C. § 1821(b) are not recoverable under Rule 54(d), such fees are recoverable pursuant to Rule 26(b)(4)(C) for an expert's time spent responding to discovery requests."). The Seventh Circuit has held that the timing of a party's request for this cost is not a

bar to recovery under this rule. *Chambers v. Ingram*, 858 F.2d 351, 361 (7th Cir. 1988).

Great Lakes is entitled to recover reasonable fees for its expert witnesses' deposition time. The amounts sought – $150 and $300 per hour – appear reasonable to the court, and indeed, London Insurers do not contend otherwise. The court rejects London Insurers' conclusory assertion that fees should be denied because the experts testified regarding excess policies, not CGL policies. Whether or not London Insurers view the experts' testimony as material to the case at this point, they did see fit to expend a substantial amount of time deposing the experts and cross-examining them at trial. Neither Rule 26(b)(4)(C) nor § 1920 condition fee recovery on the opposing party conceding the relevance of an expert's testimony. The court awards Great Lakes $5,236.81 in witness fees.

For some reason, London Insurers has used its objections to the City of Chicago's bill of costs to challenge the $53.50 in service fees sought by Great Lakes. The court is even more puzzled as to why the City defended its ability to recover service fees, given that the court cannot find any service fees sought in the City's bill of costs. The court presumes that London Insurers meant to challenge Great Lakes' service fees, but will address the City's argument nonetheless. London Insurers argues that the $53.50 charge for service of process may be too high because only the amount that a marshal would have charged is recoverable under 28 U.S.C. § 1920(1). The City misses the point in its response, arguing that "London Insurers' contention that only fees for service by a marshal are recoverable is completely without merit." (Reply at 8) The issue is not whether a private process server's fee is recoverable, but whether the amount by which the private process server's fee exceeds the marshal's fee is recoverable. Nevertheless, London Insurers offer no basis for their contention that the recoverable private process server's

fee is capped at the amount of the marshal's fee, nor is there a suggestion of any such limitation by the many courts that have allowed the recovery of private process servers' fees. *See Chamberlain Mfg. Corp. v. Maremont Corp.*, No. 92 C 0356, 1995 WL 769782, at \*5 (N.D. Ill. Dec. 29, 1995) (recognizing that "the costs of private service are taxable under § 1920(1)" and listing cases holding same). The court declines to create such a limitation – which, in any event, would have shaved a paltry $13.50 off Great Lakes' recovery, *see* 28 C.F.R. § 0.114 – and lets stand the full $53.50 in service fees.

The court disallows $23,831.22 in court reporter fees from Great Lakes' bill of costs, but upholds the submitted costs in all other respects. Great Lakes is awarded $80,805.83 in costs against London Insurers and Continental.

*City of Chicago's Bill of Costs*

The City of Chicago has submitted a bill of costs for $37,873.93 to be taxed against London Insurers and Continental. Continental challenges the City's entitlement to costs against it, arguing that the City cannot be considered a prevailing party as to any of the claims brought against Continental. Indeed, the only policy under which the City prevailed is London Insurers' CGL primary policy – a policy unrelated to Continental. The only recovery by the City under a Continental policy stemmed from Great Lakes' assignment of the recovery rights to the City. Continental argues that the recovery by way of assignment – which took place after discovery, at the time of trial – is not a proper ground for prevailing party status.

The City responds by pointing out that it actually helped earn Great Lakes' success on the claims related to Continental's policies. "In anticipation of obtaining a judgment against or settling with Great Lakes, as it ultimately did in 1997, to protect its own interests the City

8

pleaded and vigorously litigated throughout the case *Great Lakes'* rights under the policies rather

than rely on Great Lakes to do so alone." (Reply at 2) While it may have been prudent for the

City to help litigate Great Lakes' claims in this litigation, the City does not become a prevailing

party by helping litigate someone else's claims. Attorneys for Great Lakes did an exemplary job

of prosecuting their client's claims, and they would have prevailed on those claims even without

the City's help. The court does not quibble with the City's decision to lend its support, but there

is no basis for the City to recover costs against a defendant when its only success against that

defendant came on a claim brought and litigated fully by someone else.

The fact that Great Lakes assigned to the City its successful claim against Continental

does not change the court's analysis. The City has not alleged that any of its claimed costs

relating to Continental's polices arose after the assignment. Absent some express indication, the

court will not presume that the assignment was intended to include the right to recover Great

Lakes' taxable costs. The court finds that the City is not a prevailing party as to Continental, and

thus is not entitled to tax its costs against Continental.

London Insurers argue that no costs are taxable against them because the City is not a

prevailing party in that "the City succeeded only as to its claim under the primary CGL policy,"

and "[t]he City's status as an additional insured under the primary CGL policy was not even

contested by London Insurers." (Resp. at 2) While London Insurers contested the City's claim to

$2 million in coverage under the primary CGL policy, the City recovered less than $1 million.

Because this recovery is less than 50% of the City's claim under the CGL policy, and less than

one percent of the City's claims under all of the policies, London Insurers argue that the City

cannot be said to have prevailed for purposes of cost recovery.

9

The court disagrees. Although the City did not prevail on its claim to be an additional insured on Great Lakes' excess policies, the City did prevail on its claim under the primary policy – securing a $995,373 judgment for liability and defense costs, exclusive of interest. *See Great Lakes Dredge & Dock Co.*, 1999 WL 966472, at *2-*3.

The Seventh Circuit's analysis in *Perlman v. Zell*, 185 F.3d 850 (7th Cir. 1999) does not change the court's conclusion. In *Perlman*, the court vacated and remanded a cost award because the trial court's "short treatment of costs" was "inadequate to sustain its award." *Id.* at 860. The court doubted whether the plaintiff could be considered a prevailing party for two reasons. First, the plaintiff lost on his RICO claim, which was the only basis for federal jurisdiction. *Id.* at 859. Analogizing to courts' treatment of claims brought under § 1332(b), the court reasoned that "the district court has discretion to treat defendants as the prevailing parties because they prevailed on the only claim that justified the presence of the case in federal court." *Id.* Such an approach "enables federal courts to protect themselves from suits in which federal claims have been trumped up only to impose upon federal jurisdiction." *Id.* In this case, of course, there was federal jurisdiction over the City's primary policy claim.

The second reason why the *Perlman* court doubted the plaintiff's prevailing party status was his "modest recovery (modest in relation to his original demand, that is)," which implied "that the defendants won more of the dispute than they lost." *Id.* Specifically, the court observed that the plaintiff won only on claims "with respect to which his interest was conceded by the defendants," and that, even if the defendants had won on every issue, the plaintiff would have received the amount awarded by the jury a few years later. *Id.* Given that the jury verdict did not include the interest the plaintiff would have received had he waited, "[h]e would have been better

10

off had he waited for defendants to pay." *Id.* In that regard, the real value of the plaintiff's

recovery may have been negative. *Id.*

In vacating and remanding for the district court's reconsideration, the Seventh Circuit

cautioned that "[n]one of what we have written means that the district court is forbidden to award

costs" in the plaintiff's favor, and emphasized that "[d]istrict judges have substantial discretion

to allocate costs under Rule 54." *Id.* at 860.

London Insurers focus on one portion of *Perlman* in particular, in which the court stated:

> We have held in a series of recent cases that a litigant who wins less than 10% of his
> initial demand either is not a prevailing party for purposes of fee-shifting statutes or
> should be treated as if he had not prevailed. . . . Recovery of less than 10% of the
> claim shows that, even making allowances for puffing in the complaint, the defendant
> has won on the bulk of the seriously disputed items.

*Id.* at 859 (citations omitted). According to London Insurers, this language suggests that the City

is not a prevailing party because its ultimate recovery on the primary policy was only a tiny

fraction of what it sought on the excess policies.

While the City's failure to recover on its claims related to the excess policies may affect

the size of its cost recovery, the court does not believe that it precludes cost recovery entirely.

The *Perlman* court's reference to 10% as the cut-off for prevailing party status does not enshrine

it as a rule, but merely as one factor to be considered by the court. *See Tuf Racing Products, Inc.

v. American Suzuki Motor Corp.*, No. 99-3497, 2000 WL 1022649, at *5 (7th Cir. Jul. 24, 2000)

(observing that *Perlman* states 10% standard "in a way that makes it sound like a rule, although

the cases it cites for the rule treat it, rather, merely as a factor to consider along with other factors

weighing for or against an award of attorneys' fees").

Indeed, the only other cases placing any significance on a plaintiff's recovery of 10% of

its demand do not suggest that recovering more than 10% is a prerequisite for prevailing party status. In *Fletcher v. City of Fort Wayne, Indiana*, 162 F.3d 975, 976 (7th Cir. 1998), *cert. denied*, 526 U.S. 1136 (1999), the court upheld the trial court's determination that the plaintiffs were not prevailing parties under § 1988 where their "claims had been settled for their nuisance value rather than because plaintiffs were likely to prevail on the merits." *Id.* This conclusion was "fortified by the fact that Fletcher snapped up 3.3% of his demand, and Johnson took 8.3%," which amounted to $2,500 and $5,000 respectively. *Id.* In *Cole v. Wodziak*, 169 F.3d 486 (7th Cir. 1999), the court merely recognized that "a judge may devise a [fee] award on a ground other than the number of hours times the billing rate" where an attorney's "[c]ommitment of $85,000 in legal time to a claim with an expected value well below $50,000 was unreasonable both ex ante and ex post." *Id.* at 488. According to the *Cole* court, "[t]hat the final award was less than 10% of the demand highlights what should have been obvious earlier." *Id.*

The City's success in this litigation is vastly different than the plaintiffs' levels of success in *Perlman* and *Fletcher*. As the court noted, the plaintiff in *Perlman* lost on almost all of his claims, including the claim serving as the only basis for federal jurisdiction. His ultimate recovery was worth less than he would have received had he lost on all of his claims. The *Fletcher* plaintiffs' claims were settled for nuisance value. And the *Cole* court simply recognized that the *amount* of the fee award could be adjusted depending on the plaintiff's degree of success. Nothing in these cases suggests that the City should be precluded from recovering any of its costs. While the City lost on its excess policies claims – which, given those policies' much higher coverage limits, naturally sought much higher damages than were sought in the City's primary policy claim – the City was awarded substantial monetary benefits on its primary policy

12

claim that London Insurers steadfastly had refused to pay. This court does not believe that the Seventh Circuit intended, through its language in *Perlman*, to preclude a party from recovering costs merely because the insurance policy under which it recovered was worth less than 10% of another policy under which they did not prevail. The City prevailed on a material claim and won a substantial recovery.

The court believes that the City is entitled to at least a portion of its costs because it prevailed on its primary policy claim. Under Rule 54(d), "prevailing party" has been defined as "a party who has obtained some relief in an action, even if that party has not sustained all of his or her claims." *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1015 (7th Cir. 1985). Before determining whether the amount recovered should be reduced because its success was only partial, the court will address London Insurers' objections to specific categories of the City's claimed costs.

London Insurers argue that the City's documentation of its costs for deposition transcripts is inadequate because it cannot be determined how many London depositions were taken from July 12 -18, or whose depositions were taken. The City correctly points out that the deponents' names were set forth in an attachment to its bill of costs. (*See* Exh. 2 to Bill of Costs) The fact that the court reporter's invoices did not provide the deponents' names or the number of depositions does not preclude the City from doing so. According to London Insurers, the majority of London witnesses were deposed on issues related to the OCP and excess policies, and only John Richards testified extensively as to the primary policy. The court agrees that the bulk of Great Lakes' witnesses focused on the excess policies, and will take that into consideration in determining the amount of costs properly recoverable.

London Insurers next challenge the number of transcripts ordered by the City, arguing that, based on the court reporter's invoices, "it appears that the expedited and regular transcripts were for different deponents, and the diskettes and Compressed/Word Index entries are duplicates for each deponent." (Resp. at 5) Because a party is entitled to costs only for one original and one copy of each transcript (unless an additional copy is provided to the court), *see In re Brand Name Prescription Drugs Antitrust Litigation*, No. 94 C 897, 1999 WL 759472, at *4 (N.D. Ill. Sep. 1, 1999), and given that the City is also seeking costs for the original transcripts and videotape copies, costs for the duplicates are not recoverable. London Insurers' reading of the reporter's invoices is reasonable, as it appears that diskettes and compressed/word index copies may have been provided in addition to the transcripts and videotape copies. Given that the City does not even address this issue in its reply brief, the court disallows $204.17 in costs for diskettes and $340.28 for compressed/word index copies.[1] The court also deducts $61.28 for hand/courier deliveries of the transcripts, as such charges appear to be for the attorneys' convenience, rather than reasonable and necessary to the litigation. *See, e.g., Fields v. General Motors Corp.*, 171 F.R.D. 234, 237 (N.D. Ill. 1997).

London Insurers also are correct to challenge the submission of costs for the City's use of Realtime/Caseview for several of the United States depositions. Because the City also submitted charges for the original transcripts and copies from those same depositions, the additional charges for Realtime/Caseview are not recoverable. Accordingly, the court deducts $1,742.50 from the City's recovery.

---

[1] Using the British court reporter's conversion of the total charges from British pounds to American dollars, the court multiplied the £126 charged for the diskettes, £210 charged for compressed/word index copies, and £37.82 for courier delivery by a factor of 1.6204.

As part of its court reporter fees, the City seeks the reimbursement of $1,810.31 in charges from the London hotel at which the depositions occurred. The bulk of this amount is for the rental of a meeting room at the hotel. Because the court is unaware of a basis for taxing such costs, and the City has identified none, the court deducts $1,810.31.

As for the City's exemplification and copying costs, London Insurers argue that the City's descriptions are inadequate to determine whether the costs are actually recoverable, and that the $.16 per page charge is excessive. The City has provided a breakdown of the number of pages of documents produced, as well as the underlying invoices. The court finds that this information is sufficient, and that the total of $7,152.32 in copying costs for a case of this magnitude is entirely reasonable. The $.16 per page charge, while high, is not excessive.

The City also seeks to recover the exemplification costs for various hearing and trial exhibits. The City's descriptions of the costs – "Foamcore posters for 1/97 trial," "Foamcore posters for 4/97 hearing," "Color copies of deposition designations for 1/97 trial," and "Posters for 9/99 hearing" – are adequate. As discussed above, the court believes that demonstrative exhibits are taxable if they are necessary to the trier of fact's understanding of an issue. The City may recover the $2,590.96 it claims in exemplification costs.

London Insurers argue that the City's claimed witness fees are incorrect because only $40 may be taxed for each day of an expert witness's deposition. The City concedes this point in its reply, but it should not have. As discussed above, Rule 26(b)(4)(C) allows a party to recover its expert witness fees incurred in responding to discovery. The City correctly sought only $40 per day for its expert's trial testimony, but was within its rights to seek its experts' regular fees for their time in deposition. The witness fees claimed by the City are proper.

London Insurers argue that the City's cost recovery should be reduced by some unspecified amount because most of the costs were incurred in litigating issues regarding the excess policies – issues on which London Insurers prevailed. The Seventh Circuit has recognized that "[a] partially prevailing plaintiff should be compensated for the legal expenses he would have borne if his suit had been confined to the ground on which he prevailed plus related grounds." *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988). In this case, the issues relating to the excess policies are separable from the issues related to the primary policy, and much of the City's expert testimony, deposition transcripts, and document production had nothing to do with their claim under the primary policy – the only claim on which the City prevailed. London Insurers have not attempted to break down the costs in terms of primary versus excess policies, but the court nevertheless believes that some deduction is necessary given the City's partial success. The court believes that 20% is a generous estimate of the portion of the City's costs not attributable to the excess policy claims. Accordingly, the court will reduce the City's ultimate cost recovery by 80%.

Based on the above analysis, the court deducts from the City's bill of costs $4,158.54 in charges for diskette and compressed/word index copies of deposition transcripts, courier delivery of those transcripts, Realtime court reporting services, and hotel charges. The court awards 20% of the remaining $33,715.39 in costs, leaving the City with a cost recovery of $6,743.08 against London Insurers.

## *Continental's Bill of Costs*

Continental seeks to recover $12,127.27 in costs from the City – $9,061.99 in court reporter fees and $3,064.28 in copying costs. The City argues that Continental is not a prevailing

party because the City was awarded judgment on two of its counts against Continental, and because the court awarded the City a $23 million judgment on which Continental is jointly and severally liable. Both counts on which the City was awarded judgment against Continental, as well as the damages award, were based on Great Lakes' coverage under the excess policies. As discussed above, the fact that Great Lakes assigned a successful coverage claim to the City does not make the City a prevailing party as to Continental, nor does it preclude Continental's status as a prevailing party where Continental won on all of the claims brought and litigated by the City in its own right. Because Continental prevailed on those claims, Continental is a prevailing party for purposes of cost recovery.

The City has not objected to any of the particular costs sought by Continental. However, while the court reporter fees appear reasonable and necessary to the litigation, the court finds that Continental's documentation of its copying costs is inadequate to determine if they are reasonable and necessary. The submitted invoices appear to lump copying costs together with postage, overnight mail, facsimile charges, telephone charges, and other costs. Even where an entry is made for copying costs alone, there is not even enough information to determine the per-page copying cost. Because there is no basis to determine what, if any, portion of these costs are recoverable or reasonable, the court deducts the $3,064.28 in copying costs from Continental's recovery. Continental is awarded $9,061.99 in costs against the City.

*Intervenor Class Plaintiffs' Bill of Costs*

Although London Insurers and Continental do not object to the bill of costs submitted by Intervenor Class Plaintiffs, a small portion of the costs appear to be unrecoverable. The class plaintiffs seek to recover court reporter fees for the original deposition transcripts, as well as

diskettes and compressed/word index copies. Because only the costs of the original transcript and one copy are recoverable, the court will not allow recovery for the diskettes. The charges for hand/courier deliveries of the transcripts will also be disallowed. The court accordingly deducts $229.29[2] from the submitted costs; the Intervenor Class Plaintiffs are awarded $5,077.87 against London Insurers and Continental.

*City of Chicago's Motion for Penalty and Fees*

The City has moved for a penalty and attorneys' fees against London Insurers pursuant to § 155 of the Illinois Insurance Code, which provides that:

> (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

> (a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

> (b) $25,000;

> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

215 ILCS 5/155(1).

London Insurers challenges the applicability of § 155 to this case, arguing that admiralty law preempts state law regarding the assessment of attorneys' fees. They rely on cases from four circuits as support: *Sosebee v. Rath*, 893 F.2d 54 (3rd Cir. 1990), *Southworth Mach. Co. v. F/V*

---

[2] Using the British court reporter's conversion of the total charges from British pounds to American dollars, the court multiplied the £141.5 charged for the diskettes and courier delivery by a factor of 1.6204, resulting in a $229.29 charge.

*Corey Pride*, 994 F.2d 37 (1st Cir. 1993), *Whorton v. Home Ins. Co.*, 724 F.2d 427 (4th Cir. 1984), *Ingersoll Milling Machine Co. v. M/V Bodena*, 829 F.2d 293 (2nd Cir. 1987), and *American Nat'l Fire Ins. Co. v. Kenealy*, 72 F.3d 264 (2nd Cir. 1995). Not all of these cases are directly relevant to our inquiry, however.

In *Sosebee*, the Third Circuit faced a maritime tort action, not a dispute over a marine insurance contract. 893 F.2d at 55. In *Whorton*, the Fourth Circuit recognized that "[t]here is no statutory right to attorneys' fees in suits at admiralty," but did not address whether admiralty law preempts state law on the issue of attorneys' fees in a marine insurance contract dispute. 724 F.2d at 431. In *Southworth Mach. Co.*, the First Circuit ruled that the defendant had breached an express warranty traditionally governed by maritime law. The language of its opinion, as the City points out, suggests that federal maritime law does not govern the recovery of attorneys' fees pursuant to a maritime insurance contract dispute:

> State statutes providing for attorney's fees may sometimes be given effect in admiralty cases, notably, where the attorney's fees are awarded incident to a dispute that is not normally a subject of maritime law. For example, in *Pace v. Insurance Company of North America*, 838 F.2d 572, 578-79 (1st Cir. 1988), we held that maritime law did not preempt a Rhode Island cause of action allowing recovery of damages and attorney's fees for an insurer's bad faith refusal to pay or settle claims; the refusal to settle [insurance] claims is normally left untouched by maritime law.

*Southworth Mach. Co.*, 994 F.2d at 41.

Only the Second Circuit has expressly adopted London Insurers' position. In *Kenealy*, the Second Circuit looked to its previous holding in *Ingersoll Milling Mach. Co.*, 829 F.2d at 309, in which the court announced "the general rule . . . that the award of fees and expenses in admiralty actions is discretionary with the district judge upon a finding of bad faith." The *Kenealy* court held that "our holding in *Ingersoll* suffices to 'establish' a federal admiralty rule,

which now must be followed instead of state law." 72 F.3d at 270.

The Eleventh Circuit recently rejected *Kenealy*'s analysis, reasoning that "the cases which underlie the court's rationale in *Kenealy* do not support the notion of an emerging federal rule of law relating to attorney's fees in maritime insurance litigation." *All Underwriters v. Weisberg*, No. 99-11778, 2000 WL 1175000, at *5 (11th Cir. Aug. 18, 2000) (citing Robertson, 27 J. Mar. L. Com. at 566 ("It [ ] appears that [*Kenealy*] was wrongly decided. The court mistakenly took the American rule – a general federal procedural rule – for a substantive rule of maritime law, and wrongly used that rule to displace state substantive law.")). The Eleventh Circuit also found no reason "to require a unitary and uniform maritime federal rule respecting attorney's fees in maritime insurance litigation." *Id.* at *6. Accordingly, the court held that "a district court may award attorney's fees pursuant to [the state insurance code] against an insurer in a maritime insurance contract case." *Id.*

The Fifth Circuit has also held that state law controls the interpretation of marine insurance policies, including questions regarding the recovery of attorneys' fees. *See INA of Texas v. Richard*, 800 F.2d 1379, 1381 (5th Cir. 1986) (collecting cases). The *Richard* court reasoned that:

> Having held that state law controls the interpretation of marine insurance policies, it would defy both logic and sound policy were we to hold that the applicability of attorney's fees vel non must be determined by reference to uniform federal law. As a polyglot of differing state laws respecting the substance of marine insurance policies is permissible, we can think of no reason, nor has one been advanced, why a unitary and uniform federal rule respecting attorney's fees in marine insurance cases is required.

*Id.* at 1381.

While the Seventh Circuit has not addressed the issue, Judge Shadur, in *Perzy v.*

*Intercargo Corp.*, 827 F. Supp. 1365, 1377 (N.D. Ill. 1993), relied on § 155(1) of the Illinois Insurance Code in determining whether attorneys' fees were warranted for a marine insurer's refusal to pay. This approach seems sensible to this court as well. Aside from the general "American rule" of fee recovery, there is no particular federal rule governing the recovery of attorneys' fees in marine insurance disputes. Thus, there is no basis for preempting state law on that issue. The court also fails to discern how looking to state law in fee determinations under marine insurance disputes would undermine "the strong federal interest in maintaining uniformity in maritime law." (Resp. at 2) The court declines to follow *Kenealy*'s analysis, and holds that Illinois state law governs the City's request for attorneys' fees.

London Insurers argue that the City is not entitled to attorneys' fees under the Illinois Insurance Code because § 155 of the Code does not apply to surplus line policies. *See* 215 ILCS 5/445(12). According to London Insurers, "[u]nder the doctrine of law of the case, it having previously been determined that the subject policy was a surplus line policy, this issue is not subject to dispute at this time." (Resp. at 5)

The court order cited by London Insurers as the basis for this argument does not establish that the subject policies are surplus line policies. In its May 25, 1995 order, the court stated:

> Inasmuch as Great Lakes does not dispute that the policies at issue here are marine insurance and/or surplus line insurance, and the London Insurers have entered a general appearance in this proceeding, the bond requirement [under Section 123 of the Illinois Insurance Code] does not apply.

(Exh. A to Reply) This language reflects a determination that the policies are marine insurance, surplus line insurance, or both. The court did not need to determine whether the policies were surplus line insurance because the bond requirement was inapplicable to surplus line *or* marine

insurance. (*Id.*) The court order does not operate as law of the case as to whether the policies are surplus line insurance. In any event, the City correctly points out that marine insurance policies are not covered by the Surplus Lines Act, *see* 215 ILCS 5/445(11) (exempting "insurance of vessels, crafts or hulls, cargoes, marine builders' risks, marine protection and indemnity, or other risks . . . insured under ocean or wet marine forms of policies"), and thus § 445(12) of that Act – which provides the exemption of surplus lines from § 155(1) – is inapplicable here. The court will not preclude the City from seeking fees under § 155(1) on the ground that the policies are surplus line insurance.

London Insurers next argue that the City's § 155 claims are foreclosed because they were not pleaded in the City's complaint. They cite several cases in support of this notion, but none of them are on point. The fact that the plaintiff in *Perzy* brought a separate § 155 claim under the court's supplemental jurisdiction, *see* 827 F. Supp. at 1367, does not mean that an insured can only recover under § 155 by separately pleading it in its complaint. Contrary to London Insurers' characterization, *International Ins. Co. v. City of Chicago Heights*, 643 N.E.2d 1305 (Ill. App. Ct. 1994), *appeal denied*, 649 N.E.2d 416 (Ill. 1995), cannot reasonably be read to stand for the notion that "it is improper for the trial court to find that the insurer acted vexatiously" if the insured has not pleaded a § 155 claim in its complaint. (Resp. at 6) London Insurers cited to the following portion of the *International Ins. Co.* court's analysis:

> Chicago Heights asserts that . . . the circuit court properly awarded attorneys' fees because it implicitly found that International acted vexatiously. However, there is no express finding by the trial court of vexatiousness within the meaning of § 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1992)). Further, we find no basis upon which to presume such an implicit finding by the trial court, particularly in view of the fact that the appellees did not even raise the possibility of vexatious conduct in their pleadings or in their contentions to the trial judge.

22

*Id.* at 1313. Far from setting forth a § 155 pleading requirement, the *International Ins. Co.* court simply recognized that the appellees' failure to raise the issue of vexatious conduct supported the conclusion that the trial court did not make an implicit vexatious conduct finding.

The other cases cited by London Insurers simply recognize noncontroversial principles of pleading. For example, in *Freeman v. Chicago Park Dist.*, 189 F.3d 613 (7th Cir. 1999), the plaintiff brought a Title VII claim against her employer, alleging that she suffered racially discriminatory harassment. After the district court concluded that the jury's responses on the special verdict form were inconsistent and discharged the jury, the plaintiff sought leave to add a breach of contract claim, arguing that the harassment violated the employee handbook. *See id.* at 617. The Seventh Circuit affirmed the district court's denial of leave to amend, citing Fed. R. Civ. P. 15(b) for the rule that "a plaintiff who fails at trial to prove an essential element of his case may not retry the case on a different theory." *Id.* at 618 (quoting *Burdett v. Miller*, 957 F.2d 1375, 1380-81 (7th Cir. 1992)).

Such well-recognized pleading requirements have limited relevance here. In *Freeman*, the plaintiff sought to add a new substantive claim to her complaint after trial. The breach of contract claim entailed different elements of proof from the Title VII claim, was based on different evidence, and required different jury findings. Here, by contrast, the City simply seeks certain statutory remedies based on the court's previous findings. Section 155 is not a freestanding cause of action, but rather applies to "any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim." 215 ILCS 5/155(1). The City is not seeking to add a new claim or present a new theory of liability, but

23

simply to recover the remedies made available by § 155 to policyholders under these circumstances.

Illinois case law reflects this understanding of § 155. In *Kinzer v. Fidelity and Deposit Co. of Maryland*, 652 N.E.2d 20 (Ill. App. Ct.), *appeal denied*, 657 N.E.2d 623 (Ill. 1995), the plaintiff filed a motion for fees and costs under § 155 after the trial court awarded him summary judgment, but before the court had ruled on the defendant's motion to reconsider. *See id.* at 30. The trial court refused to entertain the § 155 motion on the ground that the action was concluded. *See id.* The appellate court reversed, reasoning that the action "was still open as long as the trial judge retained jurisdiction over the case," and that "the disincentives created by section 155 remained in effect so as to further the policies evinced by that section and the cases that have interpreted it." *Id.*

Notwithstanding the parties' appeal of the underlying judgment, the court has jurisdiction to address the § 155 motion. Because post-judgment motions for attorneys' fees and costs are separate from and collateral to the final decision on the merits, the court retains jurisdiction to decide the motions. *See, e.g., Harrington v. New England Mut. Life Ins. Co.*, No. 84 C 6669, 1988 WL 96550, at *1 (N.D. Ill. Sep. 7, 1988). Absent a jurisdictional obstacle to review of the motion, *Kinzer* provides that § 155 should be enforced. Contrary to London Insurers' interpretation, there is nothing to indicate that the *Kinzer* court would reach a different conclusion under the Federal Rules of Civil Procedure. London Insurers do not provide a compelling reason why this court should disregard *Kinzer*'s analysis.

Other courts have also – without expressly addressing the timing issue – allowed post-judgment motions under § 155. *See Harrington*, 1988 WL 96550, at *4 (denying post-judgment

§ 155 motion where insurer's conduct was not unreasonable or vexatious); *Buckner v. Causey*, 724 N.E.2d 95, 98, 105 (Ill. App. Ct. 1999) (upholding award under § 155 where post-judgment motion was filed by policyholder against insurer in garnishment proceeding), *appeal denied*, 731 N.E.2d 762 (Ill. 2000). The court concludes that, while an insured seeking remedies under § 155 may choose to plead those remedies in her complaint, neither case law nor the statute itself require that she do so. The City is not precluded from bringing a post-judgment motion under § 155.

As to the merits of the City's § 155 claim, London Insurers argue that their "conduct was not bad faith within the meaning of Section 155." (Resp. at 9) The court summarily rejects this argument, given that the court has already found London Insurers' conduct to have been "vexatious and unreasonable" – *i.e.*, the precise standard of liability set forth in § 155. In its August 27, 1999 order, the court ruled that:

> In sum, London Insurers' failure to respond to the City's request for coverage in the two years that followed the flood, its failure to defend, its failure to consider the City's interests, and its failure to take any of the steps Illinois law requires it to take to avoid liability for defense and indemnity costs must be viewed as unreasonable and vexatious. Accordingly, the court finds that the City has adequately shown that London Insurers acted in bad faith.

*Great Lakes Dredge & Dock Co.*, 1999 WL 705599, at *8. Because London Insurers has offered no convincing reason why the court should reconsider its earlier holding, the court finds that the City has satisfied § 155's standard of liability.

London Insurers also challenge the amount of the monetary award sought by the City, arguing that § 155 caps the City's recovery at $25,000. Focusing on the statute's language that the penalty must be in "an amount not to exceed any one of the following amounts," 215 ILCS

5/155(1), London Insurers contend that this "clearly states that the statutory penalty cannot exceed any of the available options." (Resp. at 13)  The City insists that "[t]he key word is '*one*,'" arguing that "[h]ad the General Assembly intended, as London Insurers contend, to make the maximum penalty the $25,000 set forth in Section 155(1)(b), the word 'one' would have been omitted, leaving Section 155(1) to read 'an amount not to exceed *any* of the following.'"  (Reply at 9-10)  By including the word "one," the City argues that any penalty is permissible as long as it does not exceed one of the three options set forth in § 155(1).

The City's interpretation of § 155 strains the English language beyond recognition.  The phrase "not to exceed any one of the following amounts" does not have a different meaning from the phrase "not to exceed any of the following amounts."  The key word is "any," not "one."  The City's reading effectively omits "any" from the statute, requiring the award of a penalty "not to exceed one of the following amounts."  In reality, § 155 precludes the penalty from exceeding "any one" of the three options – meaning, quite plainly, that it may not exceed any of the three options.

This interpretation comports with the understanding expressed by the vast majority of Illinois courts to have addressed § 155's penalty provision.  *See, e.g.*, *Cramer v. Insurance Exch. Agency*, 675 N.E.2d 897, 901 (Ill. 1996) ("The maximum allowable penalty under [§ 155] was raised to $25,000.").  The City's attempt to minimize the case law's relevance on the ground that the courts did not directly address the issue is unconvincing.  The courts' failure to devote much analysis to the meaning of the phrase "any one" may simply reflect the courts' belief that the phrase did not need interpretation.  The only case supporting the City's interpretation is *Millers Mut. Ins. Ass'n of Illinois v. House*, 675 N.E.2d 1037, 1044 (Ill. App. Ct. 1997), in which the

court held that § 155 "does not contain any language to suggest that the court is required to choose damages in the least amount possible." The *Millers Mutual* court's reasoning does not persuade this court to disregard the statute's express language, nor the wealth of case law applying it. This court declines to follow *Millers Mutual*, and holds that the City's penalty award under § 155(1) may not exceed any of the three penalty options listed.

The first and third options under § 155 – awarding 25% of the City's recovery against London Insurers, 215 ILCS 5/155(1)(a), or the excess of the recovery over the settlement amount offered by London Insurers prior to the action, 215 ILCS 5/155(1)(c) – would result in penalties in excess of the second option – $25,000. 215 ILCS 5/155(1)(b). Accordingly, the court awards the City a penalty of $25,000 under § 155.

Finally, the City correctly points out that the court provided that the City need not specify the amount of attorneys' fees it intends to seek until the court determines whether such fees will be awarded. Under § 155, the City is entitled to reasonable attorneys' fees. The City shall submit a breakdown of fees to which it believes that it is entitled by September 29, 2000. London Insurers shall submit any objections to the requested fees by October 13, and the City shall reply by October 27. The parties should focus solely on the amount of attorneys' fees, and should not rehash any of the arguments already raised regarding § 155 liability or prevailing party status.

### Conclusion

Great Lakes is awarded $80,805.83 in costs against London Insurers and Continental. The City is awarded $6,743.08 in costs against London Insurers. Continental is awarded $9,061.99 in costs against the City. The Intervenor Class Plaintiffs are awarded $5,077.87

27

against London Insurers and Continental. The City's motion for attorneys' fees and a statutory penalty against London Insurers is granted in part, to the extent set forth above. The City is awarded a $25,000 penalty against London Insurers pursuant to § 155 of the Illinois Insurance Code. The City and London Insurers are to address the amount of attorneys' fees to be awarded to the City according to the briefing schedule set forth above.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED:    September 15, 2000

28